## BLACKBURN UNIVERSITY

### v.

## HENRY H. WEER, FIRST NATIONAL BANK OF CARLINVILLE, MILTON McCLURE AND C. H. C. ANDERSON.

*Foreclosure of Mortgages—Limitation Act of 1872 not Retroactive—Construction—Bill to Foreclose—Assumption of Mortgage Debt—Principal and Agent—Limitation—Payment as New Promise—Parties.*

1. Statutes of limitation are not given a retroactive effect, except upon a clear expression of the Legislative will.

2. The Act of 1872, limiting the time for the foreclosure of mortgages, does not apply to a mortgage previously given to secure the payment of a promissory note.

3. Upon a conveyance made in 1866, of certain lots in Carlinville, the deed reserved a lien to secure a note given for part of the purchase money. In each of several subsequent conveyances of said lots, the last made December 25, 1872, the lien was expressly retained, each grantee assuming and agreeing to pay the note. The interest was paid to the legal holder, a purchaser before maturity, by various of the grantees, the last grantee paying it from December 25, 1872, to January 26, 1883. Subsequently the last of said grantees conveyed the lots by mortgage and quitclaim deed. Upon a bill filed February 5, 1885, to enforce the lien securing said note, *held:* That the note held by complainant is the original note, a difference of date being a mistake; that the bill is not barred by the Act of 1872, limiting the time for the foreclosure of mortgages; that, in the absence of

proof to the contrary, the payments of interest by the grantee of the maker, are to be taken, as against the holder of the note, as payments by the maker through him as his agent; that said payments arrested the running of the limitation of sixteen years against the note; that those holding under said last mortgage and said quitclaim deed, with notice of said first mortgage, are bound by said payments of interest as new promises which arrested the running of the statute against the mortgage debt; and that the right to file this bill was among the "rights or liabilities" saved by Sec. 24 of the Act of 1872.

[Opinion filed May 19, 1886.]

APPEAL from the Circuit Court of Macoupin county; the Hon. W. R. WELCH, Judge, presiding.

Messrs. S. S. GILBERT and PALMERS, ROBINSON & SHUTT, for appellant.

Part payment of a note is *prima facie* evidence of its execution. Walter v. Trustees of Schools, 12 Ill. 64; Melvin v. Hodges, 71 Ill. 424.

The cause of action accrued prior to July 1, 1872, and the rights of the parties are to be determined without reference to Sec. 11 of the Act of 1872. Beesley v. Spencer, 25 Ill. 216.

The existence of the mortgage debt is essential to the life of the mortgage. When the debt is paid, discharged, released, or barred by the Statute of Limitations, the mortgage is extinguished. Emory v. Keighan, 88 Ill. 482; Pollock v. Maison, 41 Ill. 517.

The payment made by Rusher, within sixteen years, operates to defeat the bar of the statute. Carroll v. Forsyth, 69 Ill. 127; Lowery v. Gear, 32 Ill. 382.

A payment of interest or part of the principal renews the mortgage. 2 Jones on Mortgages, Sec. 1198.

Irrespective of the fact that the successive grantees were bound by the acceptance of their deeds to pay off the note, the mere part payment by them would keep the mortgage alive.

The note was given by Rusher to McConnell for $1,000 purchase money; this controlling and decisive fact is not

denied by the answer of the defendants, and is proven by the deed of McConnell. All subsequent parties had notice of that fact.

Liens preserved in deeds like this, are in the nature of mortgages, and are not technical vendor's liens, as those terms are understood in courts of equity.

The lien in question is a lien by contract. The vendee's title is imperfect until the debt is paid. 1 Jones on Mortgages, Sec. 230.

It is not to be · supposed that the Legislature intended to make ten years a peremptory bar to a proceeding to foreclose a mortgage, though the note which it was intended to secure was kept alive by payments, or a new promise.

Messrs. RINAKER & RINAKER, for appellees.

· The bank and McClure never having assumed the payment of the debt secured by the Rusher mortgage, have the right to resist its enforcement against the lots in controversy. Maher v. Lanfrom, 86 Ill. 513; Dunn v. Rogers, 43 Ill. 260; Fowler v. Fay, 62 Ill. 375.

They may make every defense any innocent purchaser or incumbrancer might make.

More than sixteen years since the last payment made by Rusher had elapsed before this suit was brought, and all right to sue Rusher upon his note at law was barred under that statute, and the existence of the debt is essential to the life of the mortgage. When the debt is released or barred by the Statute of Limitations, the mortgage is extinguished. Emory v. Keighan, 88 Ill. 482.

The life of the note is not prolonged because of the consideration for which it was given.

When Hamilton assumed the payment of the debt secured by the mortgage from Rusher to McConnell, he thereby became the principal debtor, and Rusher the security. Jones on Mortgages, 741.

A payment by the principal debtor will not prevent the bar of the Statute of Limitations as against the security. Knight v. Clements, 45 Ala. 89.

Nor will the payment by a joint maker have that effect. Rush v. Stowell, 71 Pa. St. 208; Kallenbach v. Dickinson, 100 Ill. 427.

The action at law on the note against Rusher is barred and the mortgage is extinguished.    Ilet v. Collins, 103 Ill. 74.

This is not a suit on the note, and the old statute has no application to the case.    This is an attempt to foreclose a mortgage.    The suit is brought more than ten years after the right to foreclose the mortgage accrued.

It is competent for the Legislature to enact a Statute of Limitations operating on existing rights to action where there is a reasonable time allowed for bringing suits.    Koshkonong v. Burton, 104 U. S. 668, 675, and cases cited.

PLEASANTS, J.    On the 16th day of July, 1866, John T. McConnell and Camilla, his wife, by warranty deed of that date, in consideration of $3,000, conveyed four lots in Carlinville, therein described, to Jackson Rusher, with the following provision: "And the party of the first part hereby retains a lien upon the said premises by way of mortgage to secure a certain note of this date for the sum of one thousand dollars, due on the 26th day of January, A. D. 1867, payable to said John T. McConnell with interest from date at the rate of eight per cent per annum until due, and after maturity to draw interest at the rate of ten per cent per annum, being given for a portion of the purchase money for the said premises."

Some short time afterward McConnell, for a valuable consideration, assigned to the Blackburn University a note, of which the following is a copy:    "$1,000.    On or before the 26th day of January, A. D. 1867, for value received, I promise to pay to John T. McConnell, or order, the sum of one thousand dollars with interest from date at the rate of eight per cent per annum until due, and after maturity to draw interest at the rate of ten per cent. per annum.    June 16, 1866.    Jackson Rusher."

By his deed of February 20, 1868, Rusher conveyed said lots to John H. Caynor; September 7, 1868, Caynor reconveyed to

Rusher; January 19, 1869, Rusher conveyed to Julius Ham-
ilton, and he, on December 25, 1872, to appellee Weer.

In each of these deeds, after the one first above mentioned,
the lien thereby declared was expressly retained, and payment
of the note so secured, or intended to be, assumed by the
grantee, and all, including the first, were duly recorded shortly
after the execution of the same respectively.

Interest was paid each year on said note in the hands of
appellant's treasurer—by Rusher to January 26, 1869; by
Hamilton from that time to December 26, 1872, and by Weer
thereafter to January 26, 1883.

On the 13th of March, 1883, Weer executed to the First
National Bank of Carlinville a mortgage upon said lots, and
on January 26, 1885, to Milton McClure, who was president
of said bank and therein described as its "custodian," a quit-
claim deed of the same.

, No further payment being made upon said note the bill
herein was filed February 5, 1885, by the University against
said Weer, the Bank, McClure and Anderson, setting forth the
facts above stated, averring that the note so assigned to com-
plainant was the identical note referred to in the deed from Mc-
Connell to Rusher and was actually made by Rusher on the same
day the deed was executed, though the month in the date was
written "June" by mistake for "July;" that McClure, for the
bank, has leased or claims to have leased the premises described
to Weer for a year, and that Anderson is or claims to be a judg-
ment creditor of said Weer; that the liens retained by the
several deeds are all valid and subsisting and inured to the
benefit of complainant for its security, and that its rights in
the premises are prior and superior to those of the defendants;
and praying that they may be so declared by a decree to that
effect, that an account be taken of the amount due it, and the
defendants, or some of them, required to pay the same by a
time to be fixed, or in default thereof that the lots be sold,
and the equity of redemption foreclosed.

A demurrer to the bill interposed by the defendants having
been overruled, the Bank and McClure filed a joint, and Weer
a separate answer, alike in their material parts, which denied

that the note assigned to complainant was the one intended to be described in the McConnell deed, and set up the Statute of Limitations. Anderson was defaulted. Replications to the answers were put in, the cause referred to the master, proofs taken and reported, and on final hearing the bill was dismissed.

Inspection shows that the note in evidence corresponds exactly with the description in the McConnell deed in the following particulars: (1) The year of date; (2) the day of the month; (3) the payee; (4) the amount of principal; (5) the date of maturity; (6) the rate of interest until that date; (7) the new rate thereafter, and the statement in the deed that it was given for purchase money, affords ground for inference that it was made by the grantee therein named. It varies from the description only as to the month of the date, which is the one next preceding—a mistake of easy and frequent occurrence. That it was a mistake in this case is manifest from the amount of Rusher's first payment on February 9, 1867, which was $42.22, being the exact amount of interest due at maturity from the 16th of July instead of June. The payment of interest upon it by each of the parties who assumed to pay it upon the one mentioned in the deed recognized it as the same, and we can not entertain the slightest doubt of its identity.

Of the existence, character and amount of this lien the Bank and McClure had constructive notice by the recorded deeds. They also had actual notice from Weer himself as he testifies, and McClure admits that the note was outstanding, unpaid, and in the hands of complainant by its treasurer. A recorded assignment of the lien by McConnell to complainant could have given them no fuller or clearer information. They therefore occupy no such position as was protected in Ogle v. Turpin, 102 Ill. 148, but stand in Weer's shoes and hold subject to complainant's claim unless it is barred by the Statute of Limitations, which is the only question in the case.

The provision relied on is Sec. 11 Ch. 83 of the R. S. 1874, which became a law on July 1, 1872, and declares that "No person shall commence an action or make a sale to foreclose

any mortgage or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrued."

The deed from Hamilton to Weer by which the latter assumed to pay this lien, was executed December 25, 1872, after the statute took effect. The note being then overdue, the right to foreclose as against Weer accrued immediately, and yet the bill herein was not filed until February 5, 1885, more than ten years thereafter.

Appellees therefore claim that the right to foreclose upon Weer's assumption was absolutely barred by the statute, and further, that Rusher, the original mortgagor, paid no interest on the note after January 19, 1869, which was seventeen days more than sixteen years before the filing of the bill; so that under the rule of the courts as held before the statute, by which the right to foreclose ceased only with the right to maintain an action for the debt, it was also barred as to him.

Perhaps it may be doubted whether this 11th section, which in terms applies only to "a mortgage or deed of trust in the nature of a mortgage"—technical terms, having a well known common law meaning—embraces a lien of the kind here in question, notwithstanding it may be within the reason of the law. Bedell v. Jenney, 4 Gilm. 205 *et seq.*, and authorities there cited; Hazel v. Shelby, 11 Ill. 9. But since the earlier strictness of construction has been somewhat relaxed (C. & N. W. Ry. Co. v. Jenkins, 103 Ill. 595–6), we are not prepared to hold it does not.

Assuming it does, it becomes important to ascertain what lien or liens this bill seeks to enforce, and the relations of these successive grantees, by virtue of their several assumptions and of their ownership of the equity of redemption, to each other, to the original mortgagee, McConnell, and his assignee, the complainant. Counsel for appellees insist it is the lien retained by the deed from Hamilton to Weer of December 25, 1873, and none other. If this were true, we might not deny that the bill was rightly dismissed. Considered solely as an original, independent lien, it may be that it was barred by the statute, though if it were legally possible to ar-

rest its running, he certainly did it by his repeated payments of the interest. But for reasons here following, we do not feel called on to express an opinion upon that question.

The counsel who thus insist, however, open their argument here with the statement that "this was an action by bill to foreclose a mortgage * * * executed by Jackson Rusher on the 16th of July, 1866." This statement, we apprehend, is correct so far as it goes, but does not fully present the character and object of the bill. The bill itself does not explicitly state them, but besides the reservation in the deed to Rusher, it is careful to set out also the retention clauses in the several subsequent conveyances, and expressly avers they are all valid and subsisting liens and inured to complainant's benefit. It thus relies upon each and all, and if either was subsisting it was prior to the claims of appellees and warranted the relief asked.

Here then, were a promissory note assigned to appellant before its maturity, and several successive and distinct, but not unrelated liens by way of mortgage to secure it, executed before there was any statute limiting the time within which foreclosure might be had. Were they all barred by the Act of 1872?

The following general propositions are so familiar that we need only to indicate them with the utmost brevity:

The assignee of a note secured is regarded in equity as the purchaser of all the securities and remedies attached to it. Vansant v. Allmon, 23 Ill. 30; Lucas v. Harris, 20 Ill. 165.

A mortgage, considered as security, is only an incident to the debt, and until the Act of 1872 took effect subsisted against a bar by limitation just as long as its principal. Lock v. Caldwell, 81 Ill. 417; Hagan v. Parsons, 67 Ill. 170; Medley v. Elliott, 62 Ill. 532; Pollock v. Maison, 41 Ill. 546; Olds v. Cummings, 31 Ill. 188; Roberts v. Lawrence, 16 Ill. App. 455, and cases last above.

The courts do not give to statutes of limitation a retroactive effect by construction, but only upon a clear expression of the Legislative will. Conway v. Cable, 37 Ill. 90; Marsh v. Chestnut, 14 Ill. 227; Thompson v. Alexander, 11 Ill. 54;

Smart v. Morrison, 15 Ill. App. 228–9. This rule has been expressly applied to the act in question. Dickson v. C., B. & Q. R. R. Co., 77 Ill. 332 ; Hyman v. Bayne, 83 Ill. 256 ; Means v. Harrison, 114 Ill. 248 ; Smart v. Morrison, 15 Ill. App. 228.

The law in force when a cause of action accrues will govern, unless the later one clearly indicates otherwise. Beasley v. Spencer, 25 Ill. 216.

Every promise by the debtor to pay the debt, expressed or implied, arrests the running of the statute, and such a promise is implied by his partial payment of the principal or any interest. Kallenback v. Dickinson, 100 Ill. 427 ; Carroll v. Forsyth, 69 Ill. 127 ; Lowery v. Gear, 32 Ill. 382. Payment by another for him, by his authority or with his consent, is the same in effect. Kallenback v. Dickinson, 100 Ill. 427 ; Mellick v. De Seelhorst, Beecher's Breese, 222.

All who claim under a mortgagor, with notice of the mortgage at the time they acquire their interest, whether actual or constructive, are bound by his payment as a new promise arresting the course of the statute against the mortgage debt. Emory v. Keighan, 88 Ill. 482 ; Hughes v. Edwards, 9 Wheat. 489 ; Heyer v. Pruyn, 7 Paige, Chy. R. 465 ; Palmer v. Butler, 36 Iowa, 581–2.

The application of these propositions is obvious. The statute in force when the note here in question was given and matured was that of November 5, 1849, which limited the right of action thereon to sixteen years from the time the cause accrued. It has been seen that the last payment on account of it by Rusher, the maker, in person, was made a little more than sixteen years before the commencement of this suit. But Hamilton his immediate grantee of the equity of redemption in the mortgage premises, who was charged by him and assumed to pay it, and is presumed to have deducted from the price an amount sufficient for that purpose, made payments on account of it within the sixteen years next before the filing of the bill herein. Why, then, were not these, in effect, payments by Rusher, which arrested the running of the statute against the note as to him ? And why are not the appellees,

all of whom claim under him, with notice, also bound by them as to their effect upon the mortgage?

Counsel say that by his assumption of the debt Hamilton became principal debtor and Rusher surety, and that payment by the principal will not prevent the bar of the statute in favor of the surety; citing, Kallenback v. Dickinson, 100 Ill. 427. But the reason for this, as the case cited and the authorities there referred to show, is, that operating as it does in that behalf only as a new promise, it can bind only those by whom or whose authority it is made; and there can be no presumption that a principal, in making payment, acts for or by authority of his surety. Being primarily his own debt he pays it for himself. So of a co-contractor, or copartner after dissolution of the partnership. But, as the same authorities further show, it is otherwise when made for another and by his authority, express or implied, as by a surety for his principal, or by a copartner for his firm during the existence of the co-partnership.

We apprehend that Rusher could not, by any arrangement with Hamilton alone, affect his relation or liability to appellant, and that Hamilton, by his assumption of the debt and lien, became principal in his stead only as between himself and Rusher. In Jones on Mortgages, Sec. 740, it is said: "As between these parties (the mortgagor and his grantee assuming the debt) the purchaser then becomes primarily liable and the mortgagor only a surety for the payment of the debt," and in Sec. 741 the statement is repeated, in substance, with this addition: "The mortgagee may treat both as principal debtors and may have a personal decree against both."

Hamilton's assumption, then, did not, *ipso facto*, extinguish or change the liability of Rusher to appellant. Its effect was to give it an additional obligation and security at its option. There is no evidence in the record of its consent or intention to hold Rusher as surety only, unless it be the bare acceptance of interest from Hamilton. But apart from the deed there is nothing to show the character in which he made the payments, and none whatever as to that in which appellant recognized him. In such absence of proof the presumption would be it

treated him as would best subserve its own interest without any violation of his rights, and a court of equity might well so hold upon the principle declared in Edgerton v. Young, 43 Ill. 464, and Ætna Life Ins. Co. v. Corn, 89 Ill. 170.

This would be as the agent of Rusher, the original debtor and mortgagor, who had conveyed to him the equity of redemption in the mortgaged premises and thereby expressly charged him to pay the debt. Rusher must have known that Hamilton's acceptance of the deed did not discharge or change his liability to the creditor. It was therefore a clear authority given to pay it for him.

In Barger v. Durvin et al., 22 Barb. 68, after a discussion of the principle involved and a review of the authorities, the case and the law applicable to it are thus briefly stated by the court: "Here the defendants, within six years before this suit was barred as to them by the Statute of Limitations, conveyed their property to trustees, and directed them to pay this note among others, naming and describing it; to pay in full if their property was sufficient, if otherwise, to pay a ratable dividend upon it, with other debts. Is there any difference in principle between this authority and that conferred by an express, written direction by the debtors to an agent to pay a particular amount upon a given debt? There could be no doubt that a payment by an agent, under such an authority and direction, would be equivalent to a payment by the debtor himself, and would afford incontrovertible evidence of liability and a new promise.

"I can see no reason why the act of the assignees of these defendants, under all the circumstances of the case, should not be treated as an act of the defendants themselves, by an agent duly authorized for that purpose, and as evidence of a new promise by the debtor to pay this note." There appears to be no substantial difference in principle between that case and the one at bar.

Still more analogous, and more nearly than any other we have found, is that of E. J. Cockfield, tutor, etc., v. Farley et al., 21 La. Ann. 521. It was a contest between mortgage creditors for the proceeds of the sale of the mortgaged

premises in the hands of the Sheriff. At the succession sale of Wm. Cockfield, Mrs. Myers purchased the land, giving for a part of the purchase money the note held by plaintiff, payable May 1, 1861, secured by mortgage upon the same premises. On May 12, 1859, she conveyed it to Lewis, who assumed her outstanding note and gave others of his own secured by like mortgage, which were held by the defendants. On Nov. 21, 1865, Lewis sold it to Pipes, who assumed the payment of all, and on March 12, 1866, paid a large sum on the note of Mrs. Myers.

The premises were sold at the instance of defendants under the mortgage executed by Lewis to Mrs. Myers. Plaintiff opposed the application of the fund to the mortgage of defendants, claiming priority for the balance due on her note. Defendants claimed that said note was barred by the Statute of Limitations as to her, and consequently her mortgage also, but admitted it was valid and subsisting as against Lewis, who had assumed its payment, and so insisted that, being secured only by the same mortgage which also secured those held by them, it could only be paid concurrently with them. The court said: "We do not concur in the view taken by the defendants. A large payment was made on the note before prescription accrued by Pipes, who in a notarial act assumed to pay the note for the maker, Mrs. Myers. We regard the payment made by the purchaser, who retained in his hands the amount due to the original vendor and had assumed to pay it, as an interruption of prescription as to both himself and the original debtor, being made in discharge of the obligation of the latter with her implied assent." Plaintiff's claim was accordingly given preference. Here payment by a remote grantee of the mortgagor, who had assumed to pay the debt, was held to arrest the running of the statute in favor of the mortgagor because of implied authority from her to make it. By this rule even the payments by Weer would have kept the debt alive as against Rusher, much more those made by Hamilton, the immediate grantee, expressly charged to make them.

We hold that, as to appellant, Hamilton was the agent of Rusher, duly authorized to make these payments for him.

Here, then, were a promissory note and a mortgage to secure its payment, executed before the limitation law of 1872 took effect, on account of which payments were made by the maker and mortgagor through his duly authorized agent within sixteen years before the filing of this bill. And the question remains whether that act applies to and bars such a mortgage after ten years from the time it came into effect.

It is not claimed that this act which reduced the limitation of actions on promissory notes from sixteen to ten years, would affect any right accrued on this note under the act previously in force. Even without the saving by Sec. 24 of rights accrued under acts thereby repealed, the right of action on this note for sixteen years after the last payment upon it by the maker or by his authority would have been saved, because the courts will not give to limitation laws a retroactive operation without a clear expression of the Legislative intention to that effect. But it is contended that since there was no statute previously in force limiting the time for foreclosure, the act might operate upon existing mortgages without violating the rule against retroaction; and the general proposition thus contended for is sustained by the Supreme Court in Gridley v. Barnes, 103 Ill. 211. But does it apply to mortgages previously given to secure promissory notes?

The saving clause in Sec. 24 is that this section, which is held to mean this act in Hyman v. Bayne, 83 Ill. 256, " Shall not be construed so as to affect any rights or liabilities, or any causes of action that may have accrued before this act shall take effect;" that is to say, the express repeal of the Act of Nov. 5, 1849, which was in force when appellant's rights upon this note accrued, shall leave them in full force as they were under that act.

In Means v. Harrison, 114 Ill. 248, the Supreme Court noticed that this saving clause is of unusual breadth for such a provision, embracing "rights or liabilities" as well as " causes of action," and held it applicable to a note made before, but upon which a cause of action did not accrue until after the act took effect. They say " some additional meaning should be allowed

to the words ' rights or liabilities ' and that the act was designed
to be wholly prospective in its operation, and not to affect
contracts then existing." The Appellate Court for the Fourth
District had before taken the same view. Smart v. Morri-
son, 15 Ill. App. 228.

This construction would seem to save all existing remedies
and means for realizing rights and causes of action accrued or
accruing under the repealed acts.

To the note here in question there was attached, as incident
to it, what was not attached to notes in general—something
more than a right to bring an action at law upon it at any
time within sixteen years from its maturity or from the date
of the last payment on account of it. There was a " right " to
proceed also in equity within the same time, to enforce a spe-
cific lien for the amount due, upon certain lots of land, and a
corresponding " liability·" of the maker, as owner of the eq-
uity of redemption in those lots, and of those claiming under
him, though not parties to the note, to have them sold under
a decree for that purpose. This was a very substantial right,
being not merely a remedy in addition to the action at law,
but a security also. It came with the note and depended
wholly upon it. Doubtless it was the inducement to the ac-
ceptance of the note by McConnell, and by the appellant.
The right to foreclose accrued with the cause of action upon
the note, and would have had no existence without it. We
are therefore of opinion it was among the " rights or liabili-
ties" saved by the provision in section 24 of the Act of 1872.

Thus the original debt and lien for its security, created by
Rusher July 16, 1866, were still subsisting and in force as
against him and the appellees who claim through him, with
notice, when the bill herein was filed. By parity of reasoning
the additional lien created by Hamilton by his acceptance of
the deed from Rusher, of Jan'y 19, 1869, was also then in
force and binding upon him and them. He fully acknowl-
edged and promised anew to pay the debt by repeated pay-
ments of the interest due upon it, within the sixteen years
next before the commencement of this suit and by his reten-
tion of the lien in his deed to Weer of December 25, 1872, of
all which the appellees had notice.

Since the bill did not ask for a personal decree, and Rusher (who is deceased) and Hamilton had parted absolutely with their interest in the mortgaged premises, there was no necessity to make them parties, or if there was, the bill should not have been dismissed, but retained for amendment in that respect.

For the reasons above given the decree will be reversed and the cause remanded for further proceedings in conformity herewith.

The Supreme Court, since this opinion was written, has decided that the limitation law of 1872 does not apply to mortgages previously given to secure the payment of promissory notes. McMillan v. McCormick. Opinion filed at Ottawa May 15, 1886.

*Reversed and remanded.*